**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DISTRICT**

_____
In re:                                              )
                                                    )   Chapter 11
EVENT PARTNERS, LLC                                 )   Case No. 14-10112-JNF
                                                    )
    Debtor.                                         )
_____)
In re:                                              )
                                                    )   Chapter 11
AMESBURY LAND ASSOCIATES, INC.,                     )   Case No. 14-10111-JNF
                                                    )
    Debtor.                                         )
_____)

**JOINT MOTION BY CHAPTER 11 TRUSTEES FOR ORDERS (I) APPROVING (A) BIDDING PROCEDURES, (B) FORM AND MANNER OF SALE NOTICE, AND (C) SALE HEARING DATE; AND (II) AUTHORIZING AND APPROVING SALE OF REAL PROPERTY AND SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

    In accordance with Sections 105 and 363 of the United States Bankruptcy Code (the "Code"), Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 6004 and 9006, and Massachusetts Local Bankruptcy Rule 6004-1, Stewart F. Grossman, the Chapter 11 trustee (the "EP Trustee") of the bankruptcy estate of Event Partners, LLC ("EP") and Warren E. Agin, the Chapter 11 trustee (the "ALA Trustee", together with the EP Trustee, the "Trustees") of the bankruptcy estate of Amesbury Land Associates, Inc. ("ALA", and together with EP, the "Debtors"), by this motion (the "Motion") request the entry of an order (i) approving (a) bidding procedures, (b) form and manner of sale notices, and (c) sale hearing date, and (ii) authorizing and approving the sale of real property and substantially all of the Debtors' assets (consisting of real and personal property, as more particularly described herein), free and clear of liens, claims, encumbrances and interests. Subject to the approval of the Court, the Trustees have entered into

{B1782626; 6}

an asset purchase agreement dated October 30, 2014 (the "APA") with secured creditors Edward A. Dipple[1] ("Dipple") and Dipple Investment Associates, LLC ("Dipple Investments"), pursuant to which, among other things, Dipple and Dipple Investments[2] (collectively, the "Purchaser"), will purchase substantially all of the Debtors' assets (as described herein and in the APA), subject to higher and better offers. Because the Debtors' most significant revenue-generating period of the year, the winter season, is scheduled to begin in less than two months time, and for the reasons provided below, the Trustees further request that the Court (i) shorten the notice required under Bankruptcy Rule 2002 pursuant to Bankruptcy Rule 9006, and (ii) waive the stay of the effectiveness of the requested Sale Order (defined below) imposed by Bankruptcy Rule 6004(h). In further support of this Motion, the Trustees respectfully state as follows:

## I. FACTUAL BACKGROUND

1. On January 14, 2014 (the "Petition Date"), the Debtors each filed a petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101, *et seq.*, in the United States Bankruptcy Court for the District of Massachusetts.

2. On April 2, 2014, Stewart F. Grossman was appointed as the Chapter 11 trustee for EP. On April 3, 2014, Warren E. Agin was appointed as the Chapter 11 trustee of ALA.

3. ALA is the owner of the real property located at 12-14 South Hunt Road, Amesbury, Massachusetts 01913 (the "Real Property") upon which the EP business is conducted.

4. Prior to its cessation of operations, EP was the operator of Amesbury Sports Park,

---

[1] Edward A. Dipple is the holder of secured claims against EP, as detailed on page 3. Further, Dipple is the sole owner of Dipple Investments, which is the holder of secured claims against ALA. The proposed sale contemplates that Dipple will credit-bid, compromise and waive certain claims, both those held by Dipple directly and those held through Dipple Investments, all as more fully described in the APA.

[2] Dipple and Dipple Investments are presently discussing the proposed purchase with other potential investors, including Tosh Farrell Soccer Development Center ("TFS"), Mr. Tosh Farrell, and Mr. Chris George. One or more of these entities may, at the time of the closing or shortly thereafter, acquire an interest in the Purchaser or its designee.

2

a mountain sports park operated at the Real Property, which also includes a restaurant. The sports park hosted events and ran activities year-round, including winter snow tubing as well as events for third parties. EP leases part of the Real Property to TFS for use during the non-winter months under the terms of a three-year lease which commenced on January 1, 2013. The Debtors rejected the lease and TFS has elected to exercise its right to remain on the property pursuant to 11 U.S.C. § 365(h).

5. On or about December 23, 2011, the Debtors purchased business and operating assets from Amesbury Sports Park, Inc., and the Real Property, from Dipple Investments, both entities owned by Dipple. The acquisition by both Debtors was financed by Dipple and Dipple Investments, as described below.

6. Dipple holds a claim against the EP estate in the original principal amount of approximately $2,295,000.00, plus accrued and unpaid interest and fees of $131,851.36 as of the Petition Date, which is secured by a lien on substantially all assets of EP[3], including all property related to or used in connection with Amesbury Sports Park, pursuant to a Commercial Promissory Note dated December 23, 2011 by EP, as obligor, in favor of Dipple, as lender, and that certain Security Agreement dated December 23, 2011, between EP, as borrower, and Dipple, as lender.

7. Dipple Investments holds a claim against the ALA estate in the original principal amount of $1,000,000, plus accrued and unpaid interest and fees, and asserts a secured claim of $1,091,184.10 as of the date hereof, pursuant to a Commercial Promissory Note dated December 23, 2011 by ALA, as obligor, in favor of Dipple Investments, as lender. The note is secured by a mortgage, which grants Dipple Investments a first priority mortgage on and security interest in

---

[3] The lien does not extend to EP's liquor license and certain motor vehicles.

3

the Real Property, including the buildings and improvements thereon.

8. Following negotiations between the parties, and subject to the Court's approval, the Trustees have reached an agreement with Dipple that provides, among other things, that the Purchaser will purchase substantially all of the Debtors' assets, including all equipment, inventory and all other real and personal property owned by EP, except the Excluded Assets[4], and the Real Property (together, the "Property") through a combination of cash and satisfaction of the Debtors' indebtedness to Dipple and Dipple Investments, subject to higher and better offers.

## II. RELIEF REQUESTED

9. By this Motion, the Trustees first seek the entry of an order substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order") approving (a) the Bidding Procedures (as defined below), (b) the form and manner of sale notices, and (c) the sale hearing date.

10. Second, following a hearing to be scheduled by the Court, the Trustees seek entry of an order substantially in the form attached hereto as **Exhibit B** (the "Sale Order") authorizing and approving the sale of the Property free and clear of any liens, claims, encumbrances, and interests to Purchaser or such other successful bidder (as defined below) at the court-conducted auction (as described below).

11. Finally, the Trustees also request that the Court (i) set a hearing on this Motion on shortened notice pursuant to Bankruptcy Rule 9006 and (ii) waive the 14-day stay imposed by Bankruptcy Rule 6004(h).

---

[4] Excluded from the Property are: the Debtors' cash on hand, including cash collateral and escrow monies held by the ALA Trustee, the EP Trustee and Gary W. Cruickshank, respectively, all estate causes of action not otherwise released under the APA, the EP liquor license, any rights to that certain 2008 Honda and the Debtors' books and records (the "Excluded Assets").

4

A. **The Proposed Bidding Procedures**

12. The Trustees request approval of the bidding procedures (the "Bidding Procedures") attached as **Exhibit 1** to the proposed Bidding Procedures Order. The Bidding Procedures describe, among other things, the assets available for sale, the manner in which bidders and bids become "qualified," the procedure for receipt of bids and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder[5], and the Court's approval of the Sale.

13. The proposed Bidding Procedures provide for the solicitation of proposals or offers (each a "Bid") by any potential bidder (each, a "Bidder"), pursuant to the following conditions[6] and procedures:

    a. If any party objects to the relief requested in the Motion, such party shall be required to file an objection on or before **December 2, 2014, at 4:30 pm**.

    b. The Property to be sold is substantially all of the Debtors' assets, as more particularly described in the APA.

    c. The Property shall be sold free and clear of all liens, claims, encumbrances, and interests.

    d. To become a Qualified Bid, a Bidder must be provide in form and substance satisfactory to the Trustees, in advance of the bid deadline (defined below), an executed asset purchase agreement, substantially in the form of **Exhibit C** to this Motion and marked to show the amendments and modifications thereto, and a Good Faith Deposit in the amount of $25,000 in immediately available

---

[5] "Successful Bidder" refers to either (i) the highest Bidder pursuant to the Bidding Procedures, or if there are no higher and better offers than that offered by Purchaser under the APA, (ii) the Purchaser, subject to the Court's approval of the Sale Order.

[6] This section describes the salient provisions of the Bidding Procedures. A complete description is provided in Exhibit 1 to the proposed Bidding Procedures Order.

funds.

e. Bids are due no later than **December 2, 2014 at 4:30 p.m**. (eastern standard time) (the "Bid Deadline").

f. Pursuant to the APA, and subject to the Court's approval, the Trustees have agreed to a minimum purchase price with the Purchaser, who has agreed to have its Qualified Bid serve as a "stalking horse" Bid at the Auction (the "Stalking Horse Bid").  Additionally, subject to the Court's approval, the Trustees have agreed to expense reimbursement of the Stalking Horse Bidder in an amount of up to $25,000, subject to the Court's review of evidence of expenses actually incurred in such amount.

g. If more than one Qualified Bid is submitted by the Bid Deadline, the Court shall conduct an auction on the Sale Hearing Date in accordance with the Bidding Procedures.

B. **Notice of Sale Hearing, Auction, Bidding Procedures, and Objection Dates**

14. Within three (3) days after entry of the Bidding Procedures Order, the Trustees shall serve notice of the sale substantially in the form attached as **Exhibit 2** to the proposed Bidding Procedures Order (the "Sale Notice"), along with the Bidding Procedures Order and the Bidding Procedures, by either electronic mail or first-class mail, postage prepaid, upon (i) all entities known to have expressed an interest in a transaction with respect to the Property; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Property; (iii) all known creditors of the Debtors; (iv) those parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 cases pursuant to Bankruptcy Rule 2002; and (v) the Town Agent for the City of Amesbury Conservation Commission and taxing authorities.

6

15. The Trustees request that if any party objects to the relief requested in the Motion, that such party be required to file an objection (the "Sale Objection") on or before **December 2, 2014, at 4:30 pm (eastern standard time)** (the "Sale Objection Deadline").

16. The Trustees request that the Court set a sale hearing on or about **December 4, 2014**, or as soon thereafter at the convenience of the Court. (the "Sale Hearing Date").

C. **The Proposed Sale**

17. By this Motion, the Trustees propose to sell the Property to the Purchaser free and clear of liens, claims, encumbrances, and interests (including, but not limited to all claims of the City of Amesbury for unpaid real estate and personal property taxes, water/sewer and all other utility charges, and claims relating to the Enforcement Order (as described and defined below), subject to higher and better offers. The terms of the sale are set forth in the APA, attached as **Exhibit C.**

18. A summary of the pertinent provisions of the APA are as follows[7]:

| | |
|---|---|
| Seller (APA Recitals) | Stewart Grossman, as chapter 11 trustee (the "EP Trustee") for Event Partners, LLC ("EP"), Warren Agin, as chapter 11 trustee (the "ALA Trustee", and together with the EP Trustee, the "Trustees") for Amesbury Land Associates, Inc. ("ALA", and together with EP, the "Debtors") |
| Purchaser (APA Recitals) | Edward A. Dipple and Dipple Investment Associates, LLC |
| Assets (APA § 2.1) | All right, title and interest of the Debtors, the EP Trustee and the ALA Trustee in and to the following property, consisting of: (i) that certain real property owed by ALA, described as 12-14 South Hunt Road, Amesbury, MA, together with all fixtures located thereon; and (ii) all equipment, inventory and all other real, personal, and |

---

[7] The summary of the APA is intended only to assist the Court and parties-in-interest in understanding the key aspects of the transaction. In the event of any conflict between this summary and the APA, the APA shall control. The APA can be amended by the parties pursuant to a written amendment. Any capitalized terms not defined herein shall have the meanings set forth in the APA.

7

| | |
|---|---|
| | intangible property owned by EP, including all permits and existing approvals to conduct business at the above premises, other than Excluded Assets.

"Excluded Assets" means all cash in the possession of Seller on the Closing Date, including monies held by Seller and Gary W. Cruickshank in escrow, all estate causes of action not otherwise released under the APA, that certain liquor license issued by the City of Amesbury to EP, any rights of Seller or the Debtors to that certain 2008 Honda bearing VIN# 1HGCP36848AO85973 and books and records of the Debtors. |
| Purchase Price (APA § 2.3) | The aggregate purchase price (the "Purchase Price") for the Property shall be total consideration with a value of at least **$1,833,184.10**, comprised of cash and satisfaction of claims as follows:

 (a) Cash consideration in the amount of **$219,000**;

 (b) The release of all rights of Dipple and Dipple Investments to cash collateral in the possession of the Debtors, in the approximate amount of **$60,000**;

 (c) The release of all rights of Dipple and Dipple Investments to escrow monies in the possession of the Debtors, in the approximate amount of **$42,000**;

 (d) The waiver and release of all rights and claims of Dipple and Dipple Investments to that certain rent payment due to EP from Tosh Farrell Development Center on October 1, 2014 in the amount of **$21,000**.

 (e) The satisfaction by credit-bid of secured claims of Dipple Investments against ALA, totaling at least **$1,091,184.10**;

 (e) The satisfaction by credit-bid of **$400,000** in secured claims of Dipple against EP; and

 (g) The waiver and satisfaction of certain unsecured claims of Dipple against EP in the amount of **$525,238.98**, and subordination of the balance of the unsecured claims of Dipple against EP, in the amount of **$1,457,000** to allowed claims of other unsecured creditors of the EP estate. |
| Title to Property; Closing (APA § 3) | Provided that the conditions set forth in the APA have been satisfied, the Property will be transferred to the Purchaser as soon as practicable, on or before **December** |

8

| | |
|---|---|
| | **15, 2014** (the "Closing Date")[8]. On the Closing Date, the Property shall be transferred to the Purchaser free and clear of all liens and encumbrances (including, but not limited to all claims of the City of Amesbury for unpaid real estate and personal property taxes, water/sewer and all other utility charges, and claims relating to the Enforcement Order. <br><br> On the Closing Date, Purchaser shall pay the Purchase Price to the ALA Trustee and the EP Trustee, as applicable. |
| Allowed Claims; Subordination (APA § 8.2) | The following claims shall constitute ALLOWED claims against the EP estate: <br><br> (i) TFS shall have an ALLOWED non-priority unsecured claim against the EP estate in the amount of $33,030.00; and <br><br> (ii) Dipple shall have an ALLOWED non-priority unsecured deficiency claim against the EP estate in the amount of $1,457,000 which shall be subordinated to the allowed claims of other unsecured creditors against EP. |
| Releases (APA § 8.3) | On the Closing Date, Dipple, Dipple Investment Associates, LLC, Tosh Farrell Soccer Development Center and Tosh Farrell shall receive full releases of all claims against them by the Trustees and their respective estates, whether asserted or not and whether threatened or not. <br><br> On the Closing Date, the EP Trustee shall waive all claims against the ALA estate and the ALA Trustee shall waive all claims against the EP estate; the EP Trustee shall dismiss or withdraw its substantive consolidation motion with prejudice; and the ALA Trustee shall withdraw its motion for payment of rent with prejudice. |

19.     The City of Amesbury holds a lien against the Real Property for unpaid real estate and personal property taxes, water/sewer and all other utility charges, and claims relating to the Enforcement Order (defined below).  As a condition to closing under the APA, the Purchaser will provide funds to the ALA Trustee to pay these amounts in their entirety, thus satisfying

---

[8] The Closing Date may be extended by mutual agreement of Seller and Purchaser as set forth in the APA.

these liens and claims in full.  There are no additional liens, claims, encumbrances or interests of record in the Property.

20. On or about September 15, 2014, the Amesbury Conservation Commission issued an Enforcement Order (the "Enforcement Order") against ALA based on alleged damage to property near the Real Property. The Enforcement Order requires, *inter alia*, the immediate retention of a wetlands scientist to put together a proposed plan of remediation.

21. The terms of the APA provide the additional benefit to the ALA estate of freeing up cash to address issues related to the remediation. The APA terms contemplate, as a condition of closing, the APA estate and EP estate either resolving the Enforcement Order issues prior to closing, or reserving up to $30,000 in funds to resolve such issues subsequent to closing.

22. The Trustees believe that the Purchaser's offer is fair and reasonable under the circumstances, and will provide the EP estate and the ALA estate with a greater net benefit than any other method of liquidating, including through a Chapter 11 plan or through a sale by public auction.

23. The Trustees have made several efforts to market the Property, but have not received offers that would maximize the value of the Property.  In particular, during the nearly 7 months since their appointments, the Trustees have solicited and received inquiries from numerous entities regarding purchase of the Property, but have not received offers anywhere close to the at least $1,833,184.10 proposed here.  Notwithstanding these efforts, the Trustees are subjecting the Property to competing bids from buyers through the Bidding Procedures, thereby ensuring that the Trustees will receive the highest and/or otherwise best value for the Property. The Trustees fully recognize that the Bidding Procedures will further test the market value of the Property for the benefit of the EP estate and the ALA estate.

24. The Trustees will consider higher and better counter-offers for the Property provided that the price offered is at least equivalent to the Purchase Price, plus the Minimum Overbid (as defined in the Bidding Procedures). Higher offers must be on similar terms and conditions as those provided in the APA, other than the Purchase Price.

D. **Request for Shortened Notice**

25. The Trustees request that the Court set a hearing on the request in this Motion for an order approving (a) bidding procedures, (b) form and manner of sale notice, and (c) sale hearing date on shortened notice. The Trustees submit that such relief is appropriate under the circumstances articulated herein.

E. **Request for Relief from Waiting Period**

26. The Trustees further seek, pursuant to Bankruptcy Rule 6004(h), that the Court expressly provide that the effectiveness of any order approving of the sale not be stayed for any period of time after the entry of such order. The Trustees submit that such relief is appropriate under the circumstances articulated herein.

### III.  BASIS FOR RELIEF

27. In an exercise of the Trustees' sound business judgment, the Trustees have determined that it is in the best interest of the ALA estate, the EP estate, the Debtors' creditors and all parties in interest for the Trustees to sell the Property pursuant to the proposed Bidding Procedures and the proposed Sale Order.

A. **The Bidding Procedures Order Should Be Entered on the Terms Proposed.**

28. The ultimate goal of an auction in a sale pursuant to Section 363 of the Code is to maximize the value realized by the bankruptcy estate. *See In re Volpe Indus., Inc.*, CIV.A. 13-10300-DPW, 2013 WL 4517983 (D. Mass. Aug. 23, 2013), appeal dismissed (Mar. 3, 2014) ("A bankruptcy trustee has a duty to 'maximize the value obtained from a sale'"). Bankruptcy courts

have wide discretion in approving a sale to accomplish this goal. *BAC Home Loans Servicing LP v. Grassi*, EP 11-010, 2011 WL 6096509, at *5 (B.A.P. 1st Cir. Nov. 21, 2011).

29. The Trustees believe that the Bidding Procedures are fair and appropriate under the circumstances and are in the best interest of the Debtors' estates. The Bidding Procedures are structured to provide an open and fair process that will encourage competitive bidding and maximize the value of a sale of the Property. Accordingly, the Trustees submit that the Bidding Procedures Order should be entered on the terms proposed therein.

30. Likewise, the form and manner of the Sale Notice and the Sale Hearing Date should be approved. Pursuant to Bankruptcy Rule 2002(a), the Trustees are required to provide creditors with 21 days' notice of the sale hearing. Such notice must include the time and place of the Auction and the sale hearing, and the deadline for filing any objections to the relief requested. The Trustees request that the Court hold a hearing regarding approval of the Sale Order on or about **December 4, 2014**, or as soon thereafter at the convenience of the Court.

31. The Trustees propose to serve the Sale Notice, Bidding Procedures Order, and Bidding Procedures, by either electronic mail or first-class mail, postage prepaid, upon: (i) all entities known to have expressed an interest in a transaction with respect to the Property; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Property; (iii) all known creditors of the Debtors; (iv) those parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 cases pursuant to Bankruptcy Rule 2002; and (v) the Town Agent for the City of Amesbury Conservation Commission and taxing authorities.

32. The Trustees submit that notice of this Motion and the Sale Hearing Date, along with service of the Sale Notice, Bidding Procedures Order, and Bidding Procedures as provided

herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and 9006. Accordingly, the Trustees request that the Court approve the form and manner of the proposed Sale Notice.

### B. The Sale Order Should Be Entered on the Terms Proposed

33. Section 363(b)(1) of the Code provides that a trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course may be held by private sale.

34. Although Section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, in applying this section, courts have required that it be based upon the trustee's business judgment. *In re Volpe Indus., Inc.*, 2013 WL 4517983 at *5.

35. Courts look to various factors to determine whether to approve a motion under 363(b), such as: (i) whether a sound business reason or emergency exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *See, e.g.*, *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); 3 COLLIER ON BANKRUPTCY ¶ 363.02[4] (16th ed. Rev. 2014). The Trustees respectfully submit that the proposed sale of the Property fits soundly within the above-articulated standard.

#### (i) The Sale Order is Within the Trustees' Sound Business Judgment and Should Therefore Be Approved.

36. The Trustees have determined, in their considered business judgment, that the sale pursuant to the APA is appropriate and in the best interest of, and represents the best means of

13

preserving and maximizing value for, the EP estate and the ALA estate. The Trustees have concluded that the sale of the Property as a package (and not as divided assets) is the most cost effective alternative to maximize value for the benefit of the EP estate, the ALA estate, the Debtors' creditors, and other parties in interest. The Trustees believe that if the Sale Order is not approved, the Property will diminish in value.

37. Moreover, the APA provides for settlement of the secured creditors' claims against the EP estate and the ALA estate, by waiver and/or subordination; the releases and settlement of claims pursuant to the APA provide an additional savings to the estates.

### (ii) The Proposed Purchase Price is Fair and Reasonable Consideration.

38. The Trustees submit that the Purchase Price articulated in the APA is fair and reasonable consideration for the Property based on the current valuation of the Property, and is the result of extensive arm's length negotiations between the Trustees, Dipple, and their respective counsel. The Purchase Price offered by the Purchaser represents the highest and best bid for the Property received to date.

39. The expense reimbursement of up to $25,000 is also reasonable as it is subject to the Purchaser providing documentation evidencing any such expenses.

40. Furthermore, the Trustees are subjecting the Property to competitive bids pursuant to the Bidding Procedures, which will ensure that the EP estate and ALA estate will receive the highest and/or otherwise best value for the Property. Accordingly, the fairness and reasonableness of the consideration to be received under the APA will be demonstrated by a "market check" through the Bidding Procedures, which is the best means for determining whether a fair and reasonable price is being paid for the Property.

### (iii) The Proposed Sale Has Been Undertaken in Good Faith.

41. The Trustees submit that the Purchaser be afforded all protections under Section 363(m) of the Code as a good faith purchaser. Section 363(m) pf the Code provides that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith." 11 U.S.C. § 363(m).

42. Courts have defined "good faith purchaser" as "one who buys property in good faith and for value, without knowledge of adverse claims." *In re Mark Bell Furniture Warehouse, Inc.*, 992 F. 2d 7, 8 (1st Cir. 1993). "Good faith" is a lack of "fraud, collusion . . . and taking 'grossly unfair advantage' of other bidders." *Id.* Courts generally determine that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are disclosed fully. *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986).

43. The Trustees submit that the APA is not tainted by self-dealing, collusion or manipulation as it was proposed and negotiated in good faith and executed by the Trustees and the Purchaser in an arm's length transaction, and the Trustees and Dipple have fully disclosed all material information.

44. Similarly, the proposed consideration in the APA was made in good faith. The Purchaser was not preferred and did not receive special treatment. Moreover, the eventual selection of the Successful Bidder will be the result of a transparent and open process pursuant to the Bidding Procedures, subject to the Court's approval thereof. Considering that (a) the Purchaser is serving as a stalking horse whose bid is subject to higher and better offers and (b) the Bidding Procedures are structured to ensure that the Property are sold for the maximum

15

potential price, the Trustees believe that the sale has been proposed in good faith.

45. Because the proposed Bidding Procedures serve to create a fair, equitable, transparent, and competitive process, the Purchaser is a "good faith" purchaser within the meaning of section 363(m) and should be afforded the protections provided therein.

### (iv) Adequate and Reasonable Notice of the Sale Has Been Provided.

46. This Motion, together will all Exhibits, will be served upon all known creditors and parties in interest. Accordingly, creditors and parties in interest will be notified of (a) the terms and conditions of the sale, (b) the time for filing objections thereto, (c) the time and place to attend a hearing to approve the sale, and (d) the process and deadlines for the submission of competing bids. As such, this Motion and the notice of the filing thereof will provide "notice that is reasonably calculated, under the circumstances, to appraise an interested party of the pendency of an action." *In re Snug Enter., Inc.,* 169 B.R. 31, 33 (Bankr. E.D. Va. 1994) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). Accordingly, the Trustees have provided sufficient notice of the sale to potential Bidders.

### (v) The Court Should Authorize the Sale of the Property Free and Clear of All Liens, Claims, Encumbrances or Interests.

47. Section 363(f) authorizes a trustee to sell assets free and clear of liens, claims, encumbrances or interests if one of the following conditions is satisfied:

    a. applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

    b. the lienholder or claimholder consents;

    c. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d. such interest is in a bona fide dispute; or

    e. the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

48. Satisfaction of any one of these five requirements is sufficient to permit the sale of assets free and clear of all liens, claims, encumbrances or interests. *See, e.g.*, *BAC Home Loans Servicing LP v. Grassi*, EP 11-010, 2011 WL 6096509, at *5 (B.A.P. 1st Cir. Nov. 21, 2011).

49. The current liens, claims, encumbrances and interests on the Property are held by individuals or entities who either (a) consent to the proposed sale or (b) will be paid in full as a condition to the proposed sale. Thus, the Trustees believe the sale pursuant to the APA satisfies both Section 363(f)(2) and 363(f)(5).

50. Furthermore, although the Trustees believe they will be able to satisfy the requirements of Section 363(f), pursuant to the Bidding Procedures, all parties in interest will be given sufficient opportunity to object to the relief requested herein. To the extent, however, that any such entity does not object to the sale, that entity should be deemed to have consented to the relief sought herein. *See, e.g.*, *BAC Home Loans Servicing LP*, 2011 WL 6096509, at *5; *Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002). Thus, to the extent that no party holding a lien, claim, encumbrance or other interest in the Property objects to the relief requested in the Sale Order, the sale of the Property free and clear of all such liens, claims, encumbrances or interests, will satisfy section 363(f)(2).

C. **A Shortened Notice Period Pursuant to Bankruptcy Rule 9006 and Relief from the Waiting Period Under Bankruptcy Rule 6004(h) Are Appropriate.**

51. Bankruptcy Rule 9006 permits the Court to shorten the twenty-one (21) day notice of a hearing on the proposed sale of property of the estate that is otherwise required by Bankruptcy Rule 2002.

52. A shortened notice period is in the interest of the EP estate, the ALA estate, and the Debtors' creditors. The most significant period of revenue for EP's business is during the

winter months of December through February. The more expeditiously the Motion is approved, the more likely it is that the Successful Bidder will capture this revenue opportunity, which would generate a higher purchase price. A shortened period would also benefit the Purchaser, as the Purchaser would, subject to the Court's approval of the APA, be able to operate activities during the winter months, generating significant revenue. Finally, a shortened period will additionally reduce significant accruing liabilities to the estates. The Trustees thus respectfully request that the Court set a hearing on the request in this Motion for an order approving (a) bidding procedures, (b) form and manner of sale notice, and (c) sale hearing date on shortened notice.

53. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

54. The Trustees respectfully request that the Court waive the fourteen (14) day stay period and that the orders granting the relief sought in this Motion, including the Sale Order, be effective immediately upon being granted. Such relief is requested so that the Trustees and the Successful Bidder may proceed to close on the sale as expeditiously as possible and within the timeframes contemplated by the APA.

## V. CONCLUSION

WHEREFORE, the Trustees respectfully request that the Court enter an order:

    a.    Scheduling a hearing on the request for an order approving (a) bidding procedures, (b) form and manner of sale notice, and (c) sale hearing date;

    b.    Approving the Bidding Procedures;

    c.    Approving and scheduling the Sale Hearing Date;

    d.    Approving the form and manner of the Sale Notice;

  e. Authorizing the Trustees to sell the Property free and clear of liens, claims and encumbrances;

  f. Waiving the stay imposed by Bankruptcy Rule 6004(h); and

  g. Providing such other and further relief as is just and proper.

Dated: October 30, 2014  
Boston, MA

Respectfully submitted,

STEWART F. GROSSMAN,  
CHAPTER 11 TRUSTEE,

By his attorneys,

 /s/ Adam J. Ruttenberg (BY PERMISSION)  
Adam J. Ruttenberg  (BBO 553158)  
Pamela A. Harbeson (BBO 561479)  
Theodore W. Connolly (BBO 655827)  
LOONEY & GROSSMAN LLP  
101 Arch Street  
Boston, MA 02110  
(617) 951-2800  
aruttenberg@lgllp.com

WARREN E. AGIN,  
CHAPTER 11 TRUSTEE,

 /s/ Warren E. Agin  
Warren E. Agin (BBO 554242)  
SWIGGART & AGIN, LLC  
197 Portland Street  
Boston, MA 02114  
(617) 742-0110 x203  
wea@swiggartagin.com

# **CERTIFICATE OF SERVICE**

I, Warren E. Agin, hereby certify that:

A. On October 30, 2014, notice of the filing of **Joint Motion by Chapter 11 Trustees for Orders (i) Approving (a) Bidding Procedures, (b) Form and Manner of Sale Notice, and (c) Sale Hearing Date; and (ii) Authorizing and Approving Sale of Real Property and Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Interests** (the "Pleadings") was sent by the Court, by e-mail, to:

| | |
|---|---|
| Adam J. Ruttenberg | aruttenberg@lgllp.com |
| Paula R.C. Bachtell | paula.bachtell@usdoj.gov |
| John C. Elstad | jce@murphyking.com, ddk@murphyking.com |
| Michael B. Feinman | mbf@feinmanlaw.com, kmk@feinmanlaw.com |
| John Fitzgerald | USTPRegion01.BO.ECF@USDOJ.GOV |
| Donald Ethan Jeffery | dej@murphyking.com, pas@murphyking.com |
| Theodore W. Connolly | tconnolly@lgllp.com |
| Amy A. Zuccarello | azuccarello@sandw.com |
| Gary W. Cruickshank | gwc@cruickshank-law.com |

B. On October 30, 2014 I mailed a copy of the Pleadings to the following parties by first class mail postage prepaid:

Stephen DeGuglielmo
Fritz DeGuglielmo LLC
23 Middle Street
Newburyport, MA 01950

Michael Saperstein
Paul E. Saperstein Co., Inc.
144 Centre Street
Holbrook, MA 02343

Tosh Farrell Soccer Development Center
Anthony Farrell, Authorized Agent
16 South Hunt Road, Unit 4/5
Amesbury, MA 01913

October 30, 2014                    /s/ Warren E. Agin
                                    Warren E. Agin